Deen, Presiding Judge,
dissenting.
1. I am in sympathy with the majority view in this case, and dissent primarily to call to attention some of the difficulties arising from rigid application of rules obtaining on the full-blown trial of adult criminal offenders to all juvenile court proceedings. The final order of the judge entered January 16, 1975, shows that this delinquent was born December 28,1957, which made him four days short of his sixteenth (not fifteenth) birthday at the time of the arson, over sixteen at the time of the adjudicatory hearing, and over seventeen at the time of the dispositional hearing. He will reach the age of majority this year. "In the absence of evidence to the contrary, evidence sufficient to warrant a finding that acts have been committed which constitute a felony is also sufficient to sustain a finding that the child is in need of treatment or rehabilitation.” Code Ann. § 24A-2201. The conduct of the hearing differs markedly from criminal trials in that there is no jury, the public is excluded, the child himself may sometimes be excluded, and the proceeding is geared to getting to the facts of the case and the needs of the child as soon as possible. Code Ann. § 24A-1801.
Here the juvenile was represented by counsel at both adjudicatory and dispositional hearings and offered no evidence at either. Most of the evidence offered had to do with the nature and extent of the fires set throughout the schoolhouse, mindlessly destructive and expensive acts of vandalism which in and of themselves suggest a need for treatment, if not punishment, of some kind. There is not and never has been any suggestion either that this juvenile’s confession was coerced or that it was false in any particular. While I agree that the testimony *571 regarding the confession of this boy’s companion was hearsay and inadmissible to prove participation, its introduction for the purpose of showing why Michael, who had previously denied participation in the affair, immediately changed his story on learning that the companion and the latter’s parents were at the police station for the purpose of telling the truth about the occurrence, effectively demonstrates the motivation behind the confession. There is no denial that his rights, including right to counsel, were given him and that he understood them. In my opinion there is some burden on the appellant at this point, where the law has been complied with so far as the record shows, to indicate the manner in which he contends he has been harmed.
2. This leaves only the question of whether the confession should have been accepted in the absence of Michael’s parents. Lott testified that when he went to the house he first asked to see if Mike’s parents were home. They were not. There was an aunt present. She was informed that there had been a fire at the school and the officers wanted to talk to Mike, and she made no objection. Mike was asked, and readily agreed that he did not mind going to the station or talking about the fire. This was the first confrontation, after which he was returned home. There is some hazy indication in the record that the mother was institutionalized. Three attempts were made to communicate directly with the parents before the confession was taken, after the boy was finally arrested. The officers seem to have done everything they reasonably could to protect the juvenile’s rights, but as I understand the majority opinion it holds that where it is impossible to locate the family everything must be held in abeyance, at least until an attorney is appointed, and almost any questioning will be illegal. Strong reliance for this position is placed on Freeman v. Wilcox, 119 Ga. App. 325 (1967 SE2d 163). Citing In re Gault, 387 U. S. 1, this court held in Freeman: "In the present case Freeman’s confession was solicited out of court with neither counsel nor parent present. If Freeman was advised of his right to counsel and if he understood that right, it is clear from the record that his mother was not so advised. That is a crucial deficiency under the Gault case. Both must be *572 advised. Gault, however, was discussing a confession actually made during a hearing in which neither the child nor his parents had been informed either of their right to counsel or of the charges against the juvenile, nor had either been served with process. Gault and Freeman stand for the proposition that both the juvenile and his parents must be informed of their constitutional rights at the first possible opportunity, but Gault does not unequivocally say that no confession will be received unless the parent is informed, or that no contact at all is permitted until after the parents have been located. Freeman was a fourteen-year-old child; his confession was obtained during a five-day custody period. This appellant of approximately sixteen years had denied participation in the arson and had returned home; after being again detained and told that his companion had confessed he immediately retracted the denial and admitted his part in the arson. Under like conditions, the confession of a fifteen-year-old juvenile in Cotton v. United States, 446 F2d 107, was upheld against the contention that he could not effectively waive his constitutional rights. The same question was-raised in United States v. Miller, 453 F2d 634 (where the mother was at least aware of the arrest) and the court held: "In determining whether any individual, be he juvenile, or adult, has intelligently waived his constitutional rights, it is necessary to examine the totality of the circumstances. Each case is to be separately considered from the subjective viewpoint of the individual who is being questioned. Particularly when the suspect is a juvenile, he may not truly understand the rights about to be waived. The mere recital of the form of official warning, or the presentation of a copy of the warning to be read, with no additional effort at clarification by the interrogating officer may not be enough in many cases to insure that a juvenile knows and understands the possible consequences of any statement he may make.” The confession was there held to be admissible. Again in West v. United States, 399 F2d 467, the waiver of rights by a confessing juvenile of sixteen was upheld. And in Jones v. State, 119 Ga. App. 105 (166 SE2d 617) we upheld the waiver and confession of a sixteen-year-old juvenile although in the absence of *573 counsel where "the defendant both orally and in writing waived the right to counsel during interrogation, never attempted to withdraw the waiver, and made no showing that the refusal of counsel at certain pre-trial investigative interrogations was due to any lack of understanding on his part of his rights or of the issues involved.”
In re Gault, 387 U. S. 1, supra, p. 48, notes that the New York statute specified that police must attempt to communicate with the juvenile’s parents before questioning him (which was done in the present case), and that failure to do so (In re Williams, 49 Misc. 2d 154 (267 NYS2d 91)), if not alone sufficient to void the confession, is germane to the question of voluntariness.
Where all factors suggest both that the confession was voluntary and that the juvenile in reality did fully understand his rights, where no coercion or pressure to make a statement is claimed, and where the officers did in fact make every reasonable effort to contact the parents prior to the interview, the confession should not be excluded merely because the parents were not first located and advised of the right to counsel. These cases must, as stated in Cotton, supra, be judged on their own facts. A five-day detention, such as occurred in Freeman’s case, prior to the statement, together with testimony that he had not been instructed and did not understand his right to counsel, and further unchallenged testimony that the parents, who had been located, had not been informed, makes a strong showing and is reversible error. That is not the case here. The aunt, who was in charge, was notified of the purpose of questioning. A triple effort to locate the parents failed. I am not willing to say that no effort may ever be made to question a child, where his parents are unavailable, until an attorney is present, because I do not believe this is the rule enunciated by In re Gault, nor do I think it is in the interest of either the child or society.
I am authorized to state that Presiding Judge Pannell and Judge Marshall concur in this dissent.